## SUSANNA B. CORDER

*vs.*

## FLOYD GLEN CORDER.

### *Annulment of Marriage—Fraud.*

Plaintiff, a girl sixteen years of age, having been induced to marry defendant, her father's chauffeur, by his false representations as to his moral character and habits, he having obtained the marriage license by perjured testimony, her parents never having consented thereto, and the marriage never having been consummated, *held* that plaintiff was entitled to a decree annulling the marriage for fraud.

*Decided April 5th, 1922.*

Appeal from the Circuit Court for Washington County, In Equity (WAGAMAN and WALSH, JJ.).

Bill by Susanna B. Corder, by her next friend, Walter P. Maguire, against Floyd Glen Corder. From a decree dismissing the bill, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William L. Marbury* and *Henry H. Keedy, Jr.,* with whom were *C. L. Bailey, Jr., William Jenkins Wilcox, W. Preston Lane, Jr.,* and *William L. Rawls,* on the brief, for the appellant.

*C. Walter Baker* and *J. Lloyd Harshman,* with whom were *Wagaman & Harshman* on the brief, for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The object of this proceeding is to obtain a decree for the annulment of a marriage contract, on the ground of fraud, between the plaintiff, Susanna B. Corder, and the defendant Floyd Glen Corder, both of Harrisburg, in the State of Pennsylvania. The marriage took place in Hagerstown, Maryland, on June 1st, 1920. The plaintiff was about sixteen years of age and the defendant was about twenty years of age.

The material averments of the bill, upon which the relief is sought, are as follows: that the plaintiff and defendant were on the 1st of June, 1920, residents of the City of Harrisburg, in the County of Dauphin and State of Pennsylvania, and non-residents of the State of Maryland, and the plaintiff was then, and is now, a minor child, having been born February 28th, 1904; that for some time prior to the 1st day of June, 1920, the plaintiff had been in a condition of ill health, so that she had been taken from the school where she was being educated, and was at the home of her parents in Harrisburg, under the care of physicians, and that the defendant was then in the employ of her father as a chauffeur.

The bill then avers that the defendant, intending and contriving to marry the plaintiff for his own personal advantage and taking advantage of her desire, as expressed to him, not to be compelled to return to school upon her regaining her health, and notwithstanding that a license to marry could not be legally obtained by them in the place of their domicile, without the consent of their parents, fraudulently deceived the defendant by representing that they were both of an age at which they could legally obtain a license and be married in the State of Maryland, without the consent of their parents; and that thereupon, on the 1st day of June, 1920, the defendant and the plaintiff proceeded clandestinely, and without the knowledge and consent of the parents of the plaintiff, to the City of Hagerstown, in the State of Maryland, and the defendant, then and there knowing that neither of them were of an age at which they could legally obtain a

license to marry without the consent of their parents, falsely represented and swore, to the clerk of the Circuit Court for Washington County, that he, Floyd Glen Corder, was named Glen P. Corder and that he was twenty-one years of age, and that she, Susanna B. Maguire, was named Anna B. Maguire, that she was aged nineteen, and that they were both residents of Milldale, Virginia. And that, on the 1st day of June, 1920, by virtue of the license thus fraudulently obtained, a marriage was performed at the City of Hagerstown by the Rev. L. M. Ferguson, purporting to unite in marriage the defendant and the plaintiff, under the name of Glen P. Corder and Anna B. Maguire.

The bill further avers that the defendant, in order to bring about the marriage, represented himself to the plaintiff as a young man of good character and habits and that, in desiring the marriage, he was actuated solely by affection for her, whereas he had been for some years of loose and dissolute habits, and of irregular relations with various women and desired the marriage as a means of promoting his own material advantage; that the plaintiff believed the representation on the part of the defendant made to her as set forth, and that had she known them to be untrue, she would not have consented to the marriage and the same would not have been performed.

The bill further avers that the marriage was never consummated by cohabitation, nor has there ever been at any time physical intercourse between the parties hereto, and that, on the day that the marriage ceremony was performed, the defendant and the plaintiff separated and have not since lived or cohabited together as man and wife.

It also avers that, notwithstanding the representation by the defendant that, in desiring the marriage, he was actuated solely by affection for the plaintiff, and the further representation that he was both willing and able to provide a home for her, nevertheless, the day after the marriage had been discovered, June 6th, 1920, he proposed that Walter P. Maguire,

the father of the plaintiff, should receive him as a member of his household, and become responsible for his support and business advancement.

The bill also avers that, by reason of the age of the plaintiff and her physical condition, as it existed at the time of the marriage and still continues, for her to assume the duties of a wife, and possibly a mother, would be extremely dangerous, likely to result in a physical breakdown and permanent impairment of her health.

The bill then charges that, for the reasons stated, the marriage between the plaintiff and defendant was in law null and void, to all intents and purposes whatsoever, and that the plaintiff desires that it may, for the reasons set forth in the bill, be so declared.

The prayer of the bill is, (1) that the court may inquire into, hear and determine the validity of the marriage and may declare the same contrary to the Maryland statute; (2) that the marriage may be declared null and void to all intents and purposes whatsoever, and (3) a prayer for general relief.

The defendant, being an infant, answered the bill by a guardian *ad litem,* and submitted his rights to the protection of the court, denying generally all the allegations of the bill.

The defendant relies upon three grounds of defense to defeat the relief sought by the bill. First, it is contended that the courts of the state are without jurisdiction to hear and determine the question presented by the bill. Second, the allegations in the bill are not sufficient to justify the court in granting the relief sought, and third, the allegations in the bill are not met and supported by sufficient proof.

The question of the jurisdiction of the court to entertain this proceeding, we think, is free from difficulty. Apart from the fact that the defendant duly appeared in the case, and submitted himself to the jurisdiction of the court, the law is well settled in this State that equity has jurisdiction to annul a contract of marriage procured by fraud, abduction, terror or duress.

In *LeBrun* v. *LeBrun,* 55 Md. 502, it is said: Suits for nullity of marriage have been very rare in this State, but the power of a court of equity to declare a marriage null and void, when a proper case is made out, cannot be questioned. The authority of the Court, however, to act in such cases, is not derived from the powers conferred by the divorce laws, although a divorce *a vinculo* may be decreed upon some of the same grounds upon which a marriage may be declared a nullity. If the marriage be procured by abduction, terror, fraud or duress, the court, in declaring it a nullity, acts in virtue of its general jurisdiction in matters of fraud affecting contracts, and by the marriage act, express authority is given to the courts to inquire into, hear and determine the validity of any marriage, and may declare any marriage within the prohibited degrees of kindred or affinity, or any second marriage the first subsisting, null and void." *Fornshill* v. *Murray,* 1 Bland, 479; *Ridgely* v. *Ridgely,* 79 Md. 298; *Wimbrough* v. *Wimbrough,* 125 Md. 624.

In the recent case of *Brown* v. *Scott,* 140 Md. 258, this Court adopted the reasoning of the previous cases on the subject, and said, whatever may be the law of England, in respect to the effect of fraud on a marriage contract, the rule in force in this State is, that a marriage procured through fraud may be avoided.

It appears that the statute of this State, chapter 549, Acts of 1920, provides that, before the clerk of any of the courts shall issue any license he shall examine one of the contracting parties to the marriage, under oath, who shall appear personally before the clerk and make application for the same, and the clerk shall ascertain certain facts, as to the name, residence, age and other requirements named in the act, and which facts shall be set out in a printed form to be signed by the person making the application. And it is further provided, that no such license shall issue unless the male be above the age of twenty-one years and the female above the age of eighteen years; provided, however, that if the parents or guardian assent thereto, in person or by writing,

attested by two witnesses, such license may issue and the fact of such assent shall be made part of the record thereof.

It will be seen from the proof in this case, that the marriage license was obtained from the clerk of the court, upon perjured evidence given by the defendant. He falsely stated under oath that his own name was Glen P. Corder, that the plaintiff's name was Anna E. Maguire, that the residence of each was Milldale, Virginia, that his age was twenty-one and her age was nineteen, all of which the defendant knew to have been false and untrue, at the time of making the oath before the clerk.

The record also shows that the marriage was induced by fraud, and the consent of the plaintiff to the marriage was obtained by representations that the defendant knew to be false, and that he knew the plaintiff regarded as material, and without which she would not have entered into the marriage contract with him.

The plaintiff testified as to the false representations as follows: "Q. What if anything prior to the marriage did you ask him as to his moral character and previous methods of life? A. I asked him if he was a clean liver and if he had ever been diseased. Q. And what did he say? A. He said no. Q. Why did you particularly ask a question of this kind? A. Because at school they had impressed upon us the necessity of asking such questions. Q. You said you asked him whether he had been a clean liver and what did he say? A. He said he had."

It appears, from the testimony of a number of witnesses, set out in the record, that the defendant was not of clean and good habits of life as represented by him to the plaintiff prior to marriage, but on the contrary the evidence shows him to have been a man of loose and immoral habits, and of improper and irregular relations with dissolute women. The testimony also shows that he continued the same degraded habits of life after his marriage, and that he was a man without proper morals or decency.

The proof set out in the record also shows that the consent of the parents of the plaintiff to the marriage was never obtained; that the marriage has never been consummated, but the parties separated and have never cohabited since the marriage; as an employee of the plaintiff's father he abused the trust and confidence imposed in him and attempted twice to have sexual intercourse with his daughter, and failing in this, he then induced her by misrepresentations to a clandestine marriage.

Upon the facts disclosed by the record in this case, we are of opinion that the court below committed an error in dismissing the plaintiff's bill, and that she was entitled, upon the evidence, to a decree annulling the marriage contract.

In *Moser* v. *Long*, 8 Ohio Appellate Reports, page 10, a recent and somewhat similar case, the court upon the facts there stated entered a decree annulling the marriage contract, and said: "We are unable to find any grounds of public policy or public morals which require any different decree. The plaintiff would have the undoubted right to repudiate, upon the ground of her minority, any other contract that she might have undertaken to enter into, except for necessaries, and we see no reason why she should be precluded under the facts shown in this record, from repudiating the most important contract that she could possibly have undertaken to enter into. To permit a young and inexperienced girl to be permanently bound by a contract entered into in a moment of weakness and folly, under the circumstances attending this case, it seems to us, would be to deprive her of that parental protection that was intended to be vouchsafed her by the statute and which she has and should have, by every natural law. We think that to insist upon her being bound by this contract would not be to promote public morals but on the contrary, it would be a most potent influence in the opposite direction."

In *Ysern* v. *Horter*, 91 N. J. Eq. 189, the Court of Chancery of New Jersey held that an unconsummated marriage,

which is infected with fraud of any kind whatsoever which would render a contract voidable, is voidable at the option of the injured party, if promptly disaffirmed before any change of status has occurred. The facts upon which this case rested, were these: A girl eighteen years of age, who had only recently left school and had known a man only two or three weeks before marriage, was entitled to an annulment of the marriage where he falsely represented that he was of good moral character, when in fact he was a heavy drinker and had been guilty of seduction and gross immoralities with women, and she disaffirmed the marriage promptly on discovery of the fraud, before consummation of the marriage.

In *Ridgely* v. *Ridgely,* 79 Md. 307, this Court said: "Undoubtedly in the eye of the law marriage is a civil contract differing from other contracts in the circumstance that it cannot be rescinded by the mere consent of the parties. Being then a contract, it seems to follow that where it has been procured by fraud or duress, it may be set aside by a court whose inherent jurisdiction gives it authority to annul any ordinary contract procured in the same way; provided the application be promptly made and before a consummation of the marriage by voluntary cohabitation." And to the same effect are the cases of *Lyndon* v. *Lyndon,* 69 Ill. 43; *Libman* v. *Libman,* 102 Misc. Rep. 443, 169 N. Y. Supp. 900; *Svenson* v. *Svenson,* 178 N. Y. 54; *Crouch* v. *Wartenberg,* 86 W. Va. 664; *Browning* v. *Browning,* 89 Kan. 98; *Brown* v. *Scott,* 140 Md. 258; *Schouler, Marriage and Divorce,* vol. 2, secs. 1124 and 1137; *Nelson, Divorce and Separation,* vol. 2, 600; 1 *Bishop, Marriage and Divorce,* secs. 166, 602, 506.

A large number of the reported cases in other jurisdictions are collected and cited in *Brown* v. *Scott,* 140 Md. 258, decided at the October Term, 1921, of this Court, and it will be seen, they support and sustain the conclusion we have reached in this case.

We are aware of no principle of public policy that will be violated or will be subverted by annulling this marriage. On

the contrary, under the long line of authorities in other states and cited herein, to permit this marriage to stand as valid, which was procured by perjury and fraud, would be clearly against public policy and good morals.

As stated by the appellant, in the brief, the plaintiff was but a child not yet out of school, when the defendant, to whose care she had been entrusted by her parents, after first attempting to seduce her, went off with her to another state and, without the knowledge or consent of the parents and by perjured statements to the state officials at the clerk's office, obtained a license and had the marriage ceremony performed.

Being then of opinion, under all the circumstances of the case, that the plaintiff was entitled to the relief sought by the bill, the decree appealed from must be reversed, and the cause will be remanded, in order that a decree annulling the marriage between the parties may be passed.

*Decree reversed, cause remanded for a decree in conformity with this opinion, the costs in this Court and in the court below to be paid by the appellee.*