LEWIS ROBERT TITUS, *etc. v.* HELEN ROBINA TITUS

(CC 504)

Submitted May 15, 1934.   Decided June 12, 1934.

*Carl B. Galbraith* and *O'Brien & O'Brien,* for plaintiff.
*R. R. McWhinney,* and *Hall, Goodwin & Paul,* for defendant.

HATCHER, JUDGE:

This certificate involves the jurisdiction of a state court to hear a suit to annul a marriage performed in this state when neither party is a resident of the state.

This suit was brought in September, 1933, to annul a regular marriage ceremony performed in Brooke County the preceding August.   The bill alleges that both plaintiff and defendant are residents of Allegheny County, Penn-

sylvania; that both were under the age of twenty-one years in August, 1933, each being of the age of eighteen years; that neither had the consent of a parent to the marriage; that neither intended to consummate a matrimonial relation; and that they have not lived or cohabited together as man and wife.

The defendant filed a plea to the jurisdiction of the court. The plea was sworn to on September 26, 1933, but the order filing it is not in the transcript. The plea challenges jurisdiction on the following ground: "that at the time of the issuance of the writ in this cause, the said plaintiff, Lewis Robert Titus, and the said defendant, Helen Robina Titus, were both residents of Allegheny County, State of Pennsylvania, and were not and have never been residents of the State of West Virginia, and both the plaintiff and the defendant did then reside in Allegheny County, Pennsylvania, have ever since resided, and do now reside in said county and state."

The plaintiff demurred to the plea. The demurrer was overruled on December 19, 1933, and upon the joint application of plaintiff and defendant the sufficiency of the plea was certified to this court.

Counsel for defendant take the position that a court has no jurisdiction of the marriage status unless the domicile of either or both parties is within the territorial jurisdiction of the court. That position is supported by the common law. *Antoine* v. *Antoine*, (Miss.) 96 So. 305, 306; 2 Bishop on Marriage, Divorce & Separation, sec. 32. But the West Virginia Code, 1931, contains two innovations on this subject which remove it from the domination of the common law. 48-2-7 provides: "in the case of a suit to annul a marriage that was performed in this state, it shall not be necessary, if a matrimonial domicile has not been established elsewhere, that one of the parties be such a resident." 48-2-9 provides: "In the case of a suit to annul a marriage performed in this state, where neither party is a resident of the state, the suit shall be brought in the county where the marriage was performed."

We are not concerned primarily with what recognition

other courts may show to a decree in this suit, as counsel suggest. Non-territorial recognition of a decree usually depends on the service of process, and that question is not raised by the plea herein. (The summons is not in the transcript. Whatever the manner of service, the defendant filed an answer on October 23, 1933, demanding support and suit money, both of which were allowed; and the order filing the answer gives no intimation that she was even attempting to maintain the status of one specially appearing). Our only question now is whether the circuit court is empowered to entertain this suit. *Becker* v. *Becker*, 69 N. Y. Supp. 75, 77. A court of equity has inherent power over the subject matter herein. *Meredith* v. *Shakespeare*, 96 W. Va. 229, 122 S. E. 520. See generally Dicey, Conflict of Laws (2d Ed.), pp. 268, 387. Since there is special legislation relating to non-residents in such suits, the divorce statutes requiring a local domicile, etc., have no possible application. 9 R. C. L., subject Divorce and Separation, sec. 202. There is no constitutional restraint on such legislation. There is no essential impropriety in a court's hearing a controversy between citizens of another state. Wells on Jurisdiction, sec. 114. Wherefore the legislature has the obvious right to prescribe the manner in which non-residents may invoke the jurisdiction of our state courts. 15 C. J., subject Courts, section 92. Code 1931, 48-2-7 and 9, clearly implies statutory permission to a non-resident to bring such a suit. We could not hold otherwise or hold that a court could decline jurisdiction "without violently construing the statutes". Annotation 32 A. L. R. 40.

The policy of the enactments in question is solely with the legislature. It is not incumbent on us to defend that policy. It is advocated, however, by teachers of the highest standing. Professor Goodrich of Iowa State University says: "Since annulment of a marriage differs so fundamentally from divorce in that while the latter severs the matrimonial bonds, the former declares they never existed, jurisdiction to render the nullity decree is not to be found where the parties at the time it is sought,

may be domiciled. Only the law by which the marriage came into being has power to annul it." 32 Harvard Law Review, 806, 814. Professor Beale of the Harvard Law School says: "Theoretically the law that created the marriage should alone have power to declare effectively and *in rem,* that it never existed." 33 Harvard Law Review 1, 12. The policy of the enactments is also supported by the "universal rule" of courts in other controversies between non-residents, when the cause of action arose within the territory of the jurisdiction invoked. 7 R. C. L., subject Courts, sec. 66; Story on Conflict of Laws, sec. 542.

The ruling of the circuit court on the demurrer to the plea is reversed and the cause remanded.

*Reversed and remanded.*