JESSIE FRANKLIN BELL, *an Infant, etc.,* v. MARY PERINE BELL *et al.*

(No. 9029 and CC 619)

Submitted February 6, 1940. Decided March 26, 1940.

*Robinson & Stump,* for appellant.
*James B. Smith* and *P. Douglas Farr,* for appellee.

KENNA, JUDGE:

This is a chancery proceeding brought in the Circuit Court of Doddridge County seeking the annulment of a marriage which took place in Garrett County, Maryland, on the sixteenth day of May, 1938, between the plaintiff, Jesse Franklin Bell, and the defendant, Mary Perine Bell. The cause is here in a dual aspect, due to the fact that in May, 1939, an order was entered awarding *pendente lite* alimony against the plaintiff and court costs and attorney's fee against the plaintiff's next friend, J. Howard Bell, from which order the plaintiff and his next friend were

awarded an appeal, and in the following August, a demurrer was overruled to the bill of complaint and the trial chancellor certified to this Court five specific legal questions arising upon demurrer and the certification was docketed for hearing upon those further questions. Both of the appellate proceedings having been matured for hearing at this Court's January term, they were, by agreement, submitted together, and will be dealt with in that manner.

The first and most outstanding question that confronts one upon an examination of the briefs and record is whether the Circuit Court of Doddridge County is vested with jurisdiction of an annulment proceeding of this kind. The plaintiff below takes the position that Code, 48-2-1, declaring a marriage when either of the parties is under age of consent "void", as construed by a revisers' note to the effect that marriages contrary to public policy, if solemnized in or outside this state, should not be allowed to stand provided this state has jurisdiction of the parties or of the marriage status, is controlling. He says this is especially true when that section is read in the light of the provisions of Code, 48-2-7, to the effect that no suit to annul a marriage shall be maintainable unless at its commencement one of the parties is a *bona fide* resident of this state, except that if it is sought to annul a marriage performed in this state it shall not be necessary that one of the parties be a resident unless a matrimonial domicile has been established elsewhere. The revisers' note following this section states that, since the provision covers the annulment of marriages contrary to public policy or for causes existing at the time of marriage, in the opinion of the revisers no other requirement than that one of the parties be a resident of this state is imposed, because marriages of the kind contemplated should have the question of their validity determined at the earliest practical time.

To meet this contention, those representing the defendant below argue that it is unnecessary to refer to the revisers' note in order to arrive at the Legislature's intention in enacting either of the sections relied upon by the plaintiff below, due to the fact that the Legislature itself

has placed a different construction upon those same statutory provisions by the enactment of Code, 48-1-17, which, when read *in pari materia* with Code, 48-2-1, shows quite plainly what marriages not solemnized in this state our courts are authorized by statute to pass upon. The first section referred to (Code, 48-1-17) provides that if any resident of this state shall, in order to evade the law, and with an intention of returning to reside in this state, go to another state and there "intermarry" in violation of the provisions of section 1, article 2 of the same chapter, being the same section upon which plaintiff relies to void the marriage of a person under the age of consent, and shall afterwards return and reside here, "cohabiting as man and wife", the marriage shall be treated *"in all respects"* as though solemnized in this state. There is no allegation that disputants returned to this state and cohabited. The defendant stresses what she contends is the well-established general rule to the effect that the courts of the state where the marriage took place, in the absence of a conflicting statute, are vested with sole jurisdiction to pass upon the validity of the marriage ceremony, and the guardian *ad litem's* brief quotes the language of this Court in the case of *Titus* v. *Titus*, 115 W. Va. 229, 231, 174 S. E. 874, 875, as follows:

> "The policy of the enactments in question is solely with the legislature. It is not incumbent on us to defend that policy. It is advocated, however, by teachers of the highest standing. Professor Goodrich of Iowa State University says: 'Since annulment of a marriage differs so fundamentally from divorce in that while the latter severs the matrimonial bonds, the former declares they never existed, jurisdiction to render the nullity decree is not to be found where the parties at the time it is sought, may be domiciled. Only the law by which the marriage came into being has power to annul it.' 32 Harvard Law Review, 806, 814. Professor Beale of the Harvard Law School says: 'Theoretically the law that created the marriage should alone have power to declare effectively and *in rem*, that it never existed.' 33 Harvard Law

Review, 1, 12. The policy of the enactments is also supported by the 'universal rule' of courts in other controversies between non-residents, when the cause of action arose within the territory of the jurisdiction invoked. 7 R. C. L., subject Courts, sec. 66; Story on Conflict of Laws, sec. 542."

The *in rem* jurisdiction over the subject matter of the courts where the marriage took place and, with the parties before them, their right to pass upon all questions concerning its validity cannot be questioned. 2 Beale on Conflict of Laws 665, 668. This is so regardless of where the parties concerned reside. Neither can it be questioned that our statutes were enacted in the light of that well-established and generally accepted legal principle. Viewed in this light and considering no other related questions, it is at least doubtful that the purpose of the Legislature in enacting Code, 48-2-1, was to give extra-territorial effect to its provisions declaring marriages void and to vest the West Virginia courts with jurisdiction of a proceeding to annul all foreign marriages. The West Virginia Legislature, of course, cannot divest courts of other states of their jurisdiction, and it is not to be supposed that it would be its purpose to establish a jurisdiction of the same matter equal to that of another state, the two converging at no point.

On that background we must conclude that in the enactment of Code, 48-1-17, the Legislature was recognizing special circumstances whereunder a foreign marriage should be considered as though it had been performed in this state in order that the law of this state might govern its validity and for the purpose of clothing our courts with jurisdiction *in rem* respecting it. By that section, if persons, in order to evade the laws of this state, have gone beyond its confines and married and returned to this state, the marriage will be governed by the same law as though the ceremony had been performed in this state, if they cohabit here as man and wife. If they do not subsequently cohabit here, our statutes make no provision for a suit for annulment in this jurisdiction. The parties to this suit did not live together as man and wife after they returned

to this state following their ceremonial marriage in another state whither they went to avoid the laws of this state. Therefore, our courts are without jurisdiction to annul this marriage.

We have treated the question of jurisdiction to pass upon the validity of a marriage as resting upon statutes either conferring or withholding that jurisdiction with the realization that, independent of statute, there is a total absence of a generally recognized rule as to the jurisdiction of courts outside the *lex celebrationis* owing to the lack of conformity in the decided cases. We do not feel that in the light of the basis of decision followed, a discussion of that conflict would be germane or would do more than add to the existing confusion. However, those who wish to go into that phase fully will find the following references helpful: Schouler on Marriage, Divorce, Separation and Domestic Relations, Vol. 2, p. 1412, *et seq.*, particularly paragraph 1154; 32 Harvard Law Review 806; 41 Harvard Law Review 253; 26 Harvard Law Review 251; 18 California Law Review 105; and 16 California Law Review 38.

We shall now discuss the questions arising upon the appeal from the order allowing temporary alimony, an attorney's fee and suit money, as well as the effect of our disposition of the certified questions upon that order.

Apparently the decided cases are in conflict upon the question of whether, in divorce proceedings, courts not having jurisdiction of the subject matter may award alimony *pendente lite,* and attorney's fees. The Connecticut rule seems to be that laid down in the case of *Morgan* v. *Morgan,* 103 Conn. 189, 130 Atl. 254, the seventh point in an unofficial syllabus reading as follows: "In divorce action, court had jurisdiction to make orders for allowance and for additional allowance to defend, although it had no jurisdiction to determine controversy on its merits, in view of public policy requiring defendant to have full opportunity to be heard." In the same cause, the Connecticut supreme court held that under the Connecticut statute, though the court hearing the case did not have jurisdic-

tion of the parties, it could, while the case was pending before it and before lack of jurisdiction was established by a final order, make allowances to a wife in aid of her defense. *Morgan* v. *Morgan,* 104 Conn. 412, 133 Atl. 249. The Supreme Court of Georgia, in the case of *Odum* v. *Odum,* 132 Ga. 437, 64 S. E. 470, held that although in a divorce proceeding jurisdiction cannot be conferred upon the courts by consent of the parties involved and that temporary alimony can only be awarded when a divorce proceeding or one for alimony is pending, neverthless, in order to have the question of jurisdiction properly determined, the wife is entitled to costs, suit money and temporary allowances and that the final decision that the court below had no jurisdiction does not relate back to defeat allowances of that nature. On the other hand, the Colorado Supreme Court, in the case of *People ex rel. Crab* v. *The District Court,* 66 Colo. 438, 182 Pac. 5, while holding that a party may not waive venue in a divorce proceeding, held also that a court has no jurisdiction to award alimony *pendente lite* unless it is coupled with jurisdiction to render a final decree upon the merits. In the proceeding of *Peeples* v. *Land,* 182 La. 500, 162 So. 56, the Supreme Court of Louisiana adhered to the rule that where a court has no jurisdiction of the main controversey, it is without power to enter an order providing alimony. In the New York case of *Schwartz* v. *Schwartz,* 253 App. Div. 924, 2 N. Y. S. (2d) 348, it was held that in a case for separation where the jurisdiction of the court was challenged, it nevertheless had the right to award *pendente lite* allowances.

Here, again, we are confronted by a confusing terminology dating back to the days when the term "divorce *a vinculo*" was thought synonymous with "annulment". Alimony being predicated upon the marital relationship is not a logical adjunct to an annulment proceeding brought for the sole purpose of obliterating that status. Yet, a contested annulment proceeding in which the wife asserts the marriage's validity would seem to require that she be treated in a chancery court as though she occupied the

marital status until an opposite conclusion were evinced by decree. How, then, is it to be determined whether an annulment proceeding is a legal controversy in which it is not improper to require the recanting husband to provide for the reasonable expenditures of the apparent wife? A number of decided cases treat the matter as though the incoming of an answer is the determining factor, and undoubtedly it does amount to a conclusive showing of a contested validity, assuming its substance. But in so far as attorney's fees, suit money and even alimony are concerned, in many instances to require the incoming of an answer before an allowance could be made would be to withhold for a material time needed maintenance and the requirements essential to the procurement of a sufficient answer, i. e., the attorney's fee. See the discussion in *Scott* v. *Waugh, Judge,* 93 W. Va. 28, 116 S. E. 79, a mandamus proceeding based upon the conduct of a divorce case. So, although this is a matter that should be carefully considered, we think it should be left largely to the sound discretion of the trial chancellor, and that no hard and fast rule should govern its application.

Although consent cannot confer jurisdiction *in rem* in an annulment proceeding, even without that jurisdiction a court is required to assume a degree of control of all proceedings brought before it. The person who causes that necessity is the complainant who voluntarily brings the suit; not the defendant who is required to submit to the effect of the court's process. We think it perfectly plain that it would be quite inequitable to permit the plaintiff to be benefited by the lack of jurisdiction *in rem* of the tribunal of his own choosing, and at the same time allow the defendant, whom he is under an apparent legal duty to support and maintain, to have imposed upon her by him the outlay incident to resisting a proceeding to have a voidable marriage nullified from the date of the decree, not from its inception. (Code, 48-2-1, bottom). We see no abuse of discretion in the allowances made in the case before us, although we are of the opinion that it was error to charge complainant's next friend with more than court

costs, not including an attorney's fee. *Meredith* v. *Shakespeare*, 97 W. Va. 514, 125 S. E. 374. The allowance of alimony *pendente lite* and attorney's fee should be charged against the plaintiff individually.

The *Meredith* case was an annulment proceeding seeking relief based upon general equitable principles, while the case of *Stewart* v. *Vandervort*, 34 W. Va. 524, 12 S. E. 736, 12 L. R. A. 50, sought annulment under a statutory provision of the Virginia Code of 1860, which has been materially altered a number of times since that case arose. For the reason that this case is based upon our present statutory provisions that contemplate *pendente lite* allowances "after the commencement of the suit" (Code, 48-2-13), ["the suit" including an annulment proceeding (Code, 48-2-9)], we do not regard either of the above holdings as binding in the present case.

The trial chancellor's order overruling defendant's demurrer to the bill of complaint is reversed, the order awarding *pendente lite* allowances affirmed in part and reversed in part, and the cause remanded to be further proceeded with in accord with this opinion, costs being awarded to defendant below.

*Reversed.*