**HITCHENS v. HITCHENS.**

*Civil Action No. 15945.*

District Court of the United States for the District of Columbia.

Sept. 29, 1942.

74

Reuben Bonnett and Harry Bonnett, both of Washington, D. C., for plaintiff.

Francis W. Taylor, of Washington, D. C., for defendant.

EICHER, Chief Justice.

This motion to dismiss complaint poses the question whether a Maryland marriage, contracted by a male between eighteen and twenty-one years of age and a female between sixteen and eighteen years of age, without consent of parents, the domicile of both parties before and after the marriage being in the District of Columbia, is annullable by this Court.

In the first place, does this Court have jurisdiction in the sense of having the power to annul a Maryland contract?[1] Jurisdiction of the parties, of course, is clear.

 Since the decree of annulment goes back to the question of inception of the marriage status, it is the view of some authorities that for such defects the state where the marriage took place alone can declare its nullity.[2] However, by what appears to be the general rule, it is recognized, that the court of the domicile of the parties has jurisdiction to annul a marriage contracted elsewhere.[3] In determining whether such a decree will be rendered, however, the court of the forum will be governed by the principles of the marriage law of the state which, under the appropriate Conflicts of Law rule, determines the validity of the marriage in question.[4] It is admitted, however, that marriages in violation of the strong public policy of the domiciliary state can be declared null and void in a proceeding there.[5]

[1] The fact that both parties are domiciled here unquestionably presents the strongest situation for holding that such jurisdiction exists.

[2] Levy v. Downing, 1913, 213 Mass. 334, 100 N.E. 638; Bell v. Bell, 1940, 122 W.Va. 223, 8 S.E.2d 183, 128 A.L.R. 56; Beale, Conflicts of Law, Vol. I (1935) § 115.1; Goodrich, Jurisdiction to Annul A Marriage, 32 Harvard L. Review 806 (1919).

[3] Gwin v. Gwin, 1929, 219 Ala. 552, 122 So. 648; Davis v. Davis, 1934, 119 Conn. 194, 175 A. 574; Hanson v. Hanson, 1934, 287 Mass. 154, 191 N.E. 673, 93 A.L.R. 701; See Payne v. Payne, 1924, 54 App.D.C. 149, 295 F. 970; See, also, Dill v. Dill, 2 D.D.C. 97 (1937); 128 A.L.R. 61.

[4] Restatement of the Law of Conflicts of Law § 115; Payne v. Payne, 1924, 54 App.D.C. 149, 295 F. 970.

[5] Cunningham v. Cunningham, 1912, 206 N.Y. 341, 99 N.E. 845, 43 L.R.A.,N. S., 355; Beale, Conflicts of Law Vol. I (1935) at pg. 510.

The District of Columbia code provides:[6]

"The following marriages in said District shall be illegal, and shall be void from the time when their nullity shall be declared by decree, namely: * * *

"Second. Any marriage the consent to which of either party has been procured by force or fraud. * * *

"Fourth. When either of the parties is under the age of consent, which is hereby declared to be eighteen years of age for males and sixteen years of age for females."

And provision[7] is further made that: "If any marriage declared illegal by the aforegoing sections shall be entered into in another jurisdiction by persons having and retaining their domicile in the District of Columbia, such marriage shall be deemed illegal, and may be decreed to be void in said District in the same manner as if it had been celebrated therein."

■ Thus there is no policy here which declares marriages contracted by females over sixteen or males over eighteen without consent of their parents to be repugnant and void.[8] It follows, therefore, that the determinant of the right to annulment must be the law as it prevailed in the state where the marriage occurred.[9]

The applicable Maryland statute as adopted in 1939 states:[10] "It shall be unlawful within this State for any female below the age of sixteen years or any male below the age of eighteen years to marry, or for a parent to permit any such female or male to marry, except on the certificate of a licensed physician, which shall be presented with the application for the marriage license, to the effect that the girl is pregnant, or for any female between the ages of 16 and 18 years, or for any male under the age of twenty-one years, to marry unless the parent or guardian of such male or female, in person or by signed affidavit, assent thereto, and in the case of a female, swear or affirm that she is over the age of sixteen years, and in the case of a male, swear or affirm that he is over the age of eighteen years."

Thus it is seen that the present statute not only purports to make essential the consent of the parents of females under eighteen and males under twenty-one, but also to establish the minimum age for marriage at sixteen for females and eighteen for males. However, the statute leaves it uncertain as to whether marriages contracted in violation of such provision are void or voidable, on the one hand, or are valid with certain penalties attaching, on the other hand.[11]

The previous Maryland statute provided:[12] "No such license [marriage] shall issue unless the male be above the age of twenty-one years and the female above the age of eighteen years; provided, however, that if the . parents or guardian assent thereto, in person or by writing, attested by two witnesses, such license may issue and the fact of such assent shall be made part of the record aforesaid."

■ Under that statute as under the present law it was not certain whether a marriage contracted without parental consent was void or voidable, or valid and proper, although subject to the penalties therein provided.[13] While no Maryland decisions were handed down interpreting the earlier statute it would seem that the latter answer is correct.[14] This is in accord with the general rule that unless the statute expressly declares a marriage contracted without the necessary consent of the parents to be a nullity such statutes will be

---

6 D.C.Code 1940, § 30—103.

7 Ibid. § 30—105.

8 Payne v. Payne, supra; Dill v. Dill, supra. See D.C.Code 1940, 30—111.

9 Payne v. Payne, supra; Beale, Conflicts of Law Vol. I (1935) § 115.1, 115.2.

10 II Maryland Code, 1939, Art. 62, § 7.

11 II Maryland Code, 1939, Art. 62, § 9—"Any person violating the provisions of Sections 7 and 8 shall be guilty of a misdemeanor and upon conviction thereof, shall be subject to a fine of not less than $25.00 and not more than $250.00." Also provides for punishment for perjury.

12 II Maryland Code, 1924, Art. 62, § 7.

13 I Maryland Code, 1924, Art. 27, § 363.

14 Although there has not been a direct holding on this point, the dissenting judge in Lurz v. Lurz, 1938, 170 Md. 428, 435, 184 A. 906, 185 A. 676, 678, points out that, "While under the laws of this state a license may be issued for the marriage [when under age] only with consent of his parents * * * the obtention of such * * * does not itself affect the validity of a marriage performed under the authority of the license."

construed to be directory only so that the marriage contract itself will be valid although penalties may be imposed upon the parties.[15] It is accepted, therefore, that prior to the 1939 statute the marriage law of Maryland was essentially that of the common law, namely, that if either spouse was under the age of seven the marriage was void, and if the female was between the ages of seven and twelve and the male seven and fourteen, the marriage was voidable by either and subject to ratification.[16]

Without the benefit of any Maryland case construing the earlier statute, the more difficult task remains of ascertaining just what the legislature intended by adopting the 1939 provision.[17] The manner in which the statute is worded points toward the intention that the common law age grouping was to be superseded. Thus the marriage of any person who had not reached the age of consent as well as the marriage without consent of any person whose age was in the range requiring parental consent, would both be void. It is important to note that the statute applies the same prohibition to both categories. Whereas the earlier statute applying to the age group requiring parental consent provided that "no such license shall issue," the present statute declares, "it shall be unlawful * * * to marry", both as to those below the minimum ages of sixteen and eighteen, respectively, and as to those who can lawfully marry with parental consent but do not have it. Certainly, the language of the statute, "it shall be unlawful", is capable of being interpreted. as a legislative intent not only to make the forbidden marriages criminal but also null and void.[18] The deliberate use of such stringent language as compared with the earlier provision "no

such license shall issue" calls for careful consideration.

■ There are plausible arguments, however, supporting the view that the effect and scope of the 1939 statute is the same as was given the earlier statute for the age group that violated the law by not having parental consent, namely, that the marriage was valid although the parties were guilty of a crime. Article 62, § 9,[19] clearly sets out the criminal penalties incident to any violation of the statute under consideration. But, at no place does the Maryland code specifically declare that marriages contracted in violation of such provision are null and void or even voidable. It would appear reasonable to assume that had the legislature intended such a consequence the statute, since it was changed, would have so provided.[20] Similarly, in reading the entire statute [21] it is to be noted that the "it shall be unlawful" provision is used in the same sentence both as applying to the parties to the marriage ceremony and to the parent or guardian conniving in the marriage of a party that is under the minimum age of consent. This lends weight to the suggestion that the statute may be construed properly as "in terrorem" only, and that while the Maryland legislature has sought to discourage marriages in this age group without parental consent, a lack of such consent does not necessarily make the contracted marriage invalid.[22]

■ A consequence of holding the marriage contract invalid would be to suggest the further question whether it is void or merely voidable. If void the marriage is subject to both direct and collateral attack, while if voidable only, relief is limited to

[15] Payne v. Payne, supra, holding that under Virginia law where both parties were over the age of consent, but under twenty-one, the marriage was not void, even though the parents did not consent. Nor did separation immediately after the ceremony annul the marriage. Reifschneider v. Reifschneider, 1909, 241 Ill. 92, 89 N.E. 255; Buszin v. McKibbin, 1929, 254 Ill.App. 519; Schwartz v. Schwartz, 1925, 236 Ill.App. 336; Browning v. Browning, 1913, 89 Kan. 98, 130 P. 852, L.R.A.1916C, 737, Ann.Cas. 1914C, 1288; Cushman v. Cushman, 1914, 80 Wash. 615, 142 P. 26, L.R.A. 1916C, 732.

[16] See Jones v. Jones, 1872, 36 Md. 447, 11 Am.Rep. 505; See, also, Strahorn,

"Void and Voidable Marriages in Maryland and Their Annulment". 2 Maryland L. Review 211, 233 (1938).

[17] Article 62, § 7.

[18] See 3 Maryland L. Review at pg. 341 (1939).

[19] Md.Code 1939; see note 11, supra, for statute set out in full.

[20] This view is taken by reason of the precise language used in Article 27, § 445, Md.Code 1939. This section provides: "All marriages between a white person and a negro, * * * are forever prohibited, and shall be void."

[21] Article 62, § 7, Md.Code (1939).

[22] 3 Maryland L. Review, at pg. 343 (1939).

direct attack under appropriate procedure during the joint lives of the contracting parties.[23] In Harrison v. State,[24] the Maryland court construed the word "void" to mean only voidable in a marriage between an uncle and niece. And in Feehley v. Feehley,[25] in a case involving a marriage without any license the court held the marriage valid, stating: "While the statute provides that no persons within the state 'shall be joined in marriage until a license shall have been obtained' * * * there is no purpose expressed in the statute that a marriage otherwise validly contracted and celebrated shall be void if the prescribed license shall not have been procured."[26] The court further points out: "There is an implied recognition of the efficacy of marriages solemnized without a license in the provision that a minister who shall 'marry' persons in the absence of such official authorization shall be subjected to the stated penalty."[27] This view as expressed by the court is in accord with the position that the prescribing of penalties for failure to abide by Article 62, § 7 impliedly recognizes the validity of the marriage. To say the least, it would seem that a marriage solemnized under a license improperly obtained should be as valid as a marriage under no license at all.

Further, it does not appear that the fact of lack of parental consent or non-age alone is a sufficient basis for granting an annulment in Maryland. Equity courts there exercise jurisdiction to grant annulments as an incident to their power to reform and rescind contracts.[28] Thus upon proper proof annulments may be granted for lack of contractual intention,[29] duress, fraud and deceit,[30] insanity,[31] and intoxication.[32] In Corder v. Corder,[33] the female was under sixteen years of age and the male under twenty, and the license was procured by perjured testimony, her parents never having consented. In that case the annulment was granted not for non-age or lack of consent, but for fraudulent misrepresentation of material facts. And in Montgomery v. U'Nertle,[34] no impediment of non-age or lack of parental consent was mentioned, but the annulment was granted because of the fraud and deceit practiced upon the male while in a state of intoxication. Surely, in those cases, the court would not have put the decision on the more difficult ground of fraud and deceit if lack of parental consent or non-age would have been sufficient to render such marriages null and void.[35]

Those decisions were under the earlier statute, to be sure, but in the absence of any language in the present statute specifically declaring marriages contracted without parental consent to be void, it would appear that the reasoning in those cases is still applicable. Holding the marriage to be valid in the absence of fraud or duress appears to be the better rule. This gives security and solidarity to the marriage status in which the state is vitally concerned. And children born of such a union should not be subjected to the risk of illegitimacy that would follow an annulment.

It follows that the Motion to Dismiss the Complaint must be sustained.

Counsel for defendant will prepare appropriate order.

---

[23] Corder v. Corder, 1922, 141 Md. 114, 117 A. 119; Ridgely v. Ridgely, 1894, 79 Md. 298, 29 A. 597, 25 L.R.A. 800.

[24] 1864, 22 Md. 468, 85 Am.Dec. 658; see, also, Fensterwald v. Burk, 1916, 129 Md. 131, 98 A. 358, 3 A.L.R. 1562.

[25] 1916, 129 Md. 565, 99 A. 663, L.R.A. 1917C, 1017.

[26] 129 Md. at page 568, 99 A. at page 665, L.R.A.1917C, 1017.

[27] 129 Md. at page 569, 99 A. at page 665, L.R.A.1917C, 1017.

[28] Wimbrough v. Wimbrough, 1915, 125 Md. 619, 94 A. 168, Ann.Cas.1916E, 920; Ridgely v. Ridgely, 1894, 79 Md. 298, 29 A. 597, 25 L.R.A. 800; Le Brun v. Le Brun, 1881, 55 Md. 496.

[29] Brooke v. Brooke, 1883, 60 Md. 524; see, also: Owings v. Owings, 1916, 141 Md. 416, 118 A. 858.

[30] Corder v. Corder, 1922, 141 Md. 114, 117 A. 119; Brown v. Scott, 1922, 140 Md. 258, 117 A. 114, 22 A.L.R. 810.

[31] Elfont v. Elfont, 1932, 161 Md. 458, 157 A. 741.

[32] Montgomery v. U'Nertle, 1923, 143 Md. 200, 122 A. 357.

[33] 1922, 141 Md. 114, 117 A. 119.

[34] 1923, 143 Md. 200, 122 A. 357.

[35] Under the rule in the Corder case, supra, non-age or non-consent marriages may be annulled if a fraudulent misrepresentation of a material fact can be alleged and proven.