JOHN A. TWIGG *vs.* MARY A. TWIGG.

*Divorce—Insufficient Evidence of Abandonment.*

Upon a bill for a divorce by a husband against his wife, on the ground of abandonment, the evidence merely showed that the wife had left her husband's home in the country, taking seven young children with her; that during four years afterwards, her husband lived in the same city with his wife, without seeing her or his children, or making any effort to do so, or evincing any desire on his part to resume marital relations. There was no evidence as to the causes leading to the separation of the parties, and the only testimony in corroboration of the evidence of the

plaintiff himself, was that of a witness who gave it as her opinion that the separation was deliberate and final, and beyond hope of reconciliation, without stating any facts as the basis of her opionion. *Held*, that the plaintiff is not entitled to a decree for a divorce, under Code, Art. 16, sec. 36, which provides that a divorce may be granted when the party complained against has abandoned the party complaining, and such abandonment has continued uninterruptedly for at least three years, and is deliberate and final, and under Code, Art. 35, sec. 4, which provides that no divorce shall be granted on the testimony of plaintiff alone, but that testimony in corroboration of that of the plaintiff shall be necessary.

*Decided April 1st, 1908.*

Appeal from the Circuit Court of Baltimore City (ELLIOTT, J.)

The cause was submitted to the Court on brief by:

*Thomas C. Weeks*, for the appellant.

No appearance for the appellee.

BURKE, J. delivered the opinion of the Court.

The appellant filed a bill for a divorce *a vinculo matrimonii* from his wife upon the ground of abandonment. From the decree of the lower Court refusing to grant the divorce he has appealed. The question to be decided is: Does the proof show that there had been an abandonment of the husband by the wife within the meaning *of section 36 Article 16 of the Code of 1904?* This section provides that the Court may decree an absolute divorce when it shall be satisfied by competent testimony that the party complained against has abandoned the party complaining, and that such abandonment has continued uninterruptedly for at least three years, and is deliberate and final, and the separation of the parties beyond any reasonable expectation of reconciliation; and by section 4, Article 35 of the Code it is declared that no divorce shall be granted upon the testimony of the plaintiff alone, but in all such proceedings testimony in corroboration of that of the plaintiff shall be necessary.

The ground upon which the divorce is asked being statu-

tory, it was necessary for the plaintiff to allege and prove each element of the statutory cause relied on in order to obtain relief. Abandonment, to constitute a ground for divorce *a vinculo matrimonii* under the statute, must be the deliberate act of the party complained of, done with the intent that the marriage relations should no longer exist. *Lynch* v. *Lynch*, 33 Md. 328; *Gill* v. *Gill*, 93 Md. 652. The evidence of this abandonment, as was said by CHIEF JUSTICE SHAW in *Gregory* v. *Pierce*, 4 Metcalf, 479, "may be proved by a great variety of circumstances, leading with more or less probability to that conclusion, as, for instance, leaving his wife with the declared intention never to return; marrying another woman, or living in adultery abroad; absence for a long time, not being necessarily delayed by his occupation, or business, or otherwise; making no provisions for his wife, or wife and family, being of ability to do so; providing no dwelling or home for her; or prohibiting her from following him; and many other circumstances tending to prove the absolute desertion above described." In *Gill's case, supra,* which was a suit by the wife against her husband, and where facts and circumstances showing abandonment were strong and convincing, JUDGE PEARCE quoted the above language of CHIEF JUSTICE SHAW, and said that when the proof in the case before the Court was tested by that rule it was ample to warrant a decree of absolute divorce. After having reviewed the evidence, he concludes the opinion in these words: "There have been eighteen years of uninterrupted separation and failure to provide a support for his wife, unexplained by the necessities of any business or occupation, or by inability due either to misfortune or natural incapacity, and such failure can only be regarded therefore as willful and deliberate. A husband who can endure for eighteen years a voluntary separation from his wife, can endure it throughout life, and one who has for that period proved faithless alike to his marriage vows and to his legal obligations resulting therefrom cannot, in our opinion, demonstrate more clearly his intention to disregard them to to the end."

The appellant contends that upon the authority of that case the decree of the lower Court should be reversed; but in this we cannot agree, because, in our opinion, the essential elements upon which he relied for relief are not supported by the proof. The evidence shows that the parties were married at Salisbury, Maryland, in 1877, and lived together until the spring of 1900. They had seven children—three girls and four boys, all of whom were minors at the date of the separation. The wife, against whose character not one word is spoken in the testimony, left home and took the children with her. She went first to Salisbury, and afterward she and the children came to Baltimore, where they now reside. The plaintiff has also been living in Baltimore for about four years. There is no evidence in the case, except that of the plaintiff, as to the circumstances under which the wife left home, or what caused her to go. It is unreasonable to conclude that a wife would abandon her home, and take upon herself the care and support of seven young children except for the gravest reasons, and the evidence of the plaintiff indicates pretty clearly a reason for her going. When asked to state why his wife left home he replied that he supposed "It must have been because she *couldn't agree.* She said the children were getting big enough to *make her a living.* * * * she was tired of the country." He swore that he was good and affectionate to her, and gave his wife and children a good living; but he has never seen her since she left home. Nor does it appear that he has ever seen his children, or contributed one cent to their support. He expresses no willingness to resume his marital relation, or to ascertain, except in the way which will be presently mentioned, whether his wife would be reconciled to him. He appears to have absolutely abandoned his children, and expresses no concern whatever about them. He has exhibited himself to the Court as one so regardless of his natural and legal obligations that it is not to be wondered at that his wife "*couldn't agree,*" and that she should look to the children to "make her a living." Nor is it strange that she should have "tired of the country."

We fully concur with the statement of the, learned Judge in the lower Court that "no one can read the testimony quoted without coming to the conclusion that, so far as the plaintiff was concerned, the separation was regarded by him with entire complacency, a complacency so profound that he has been living in the same city with his wife and seven children for nearly four years, and has made absolutely no effort either to win her back, or to meet in any way the natural obligation under which he was and is to provide for and take care of his own flesh and blood."

The witness produced in corroboration of the plaintiff's evidence was Emily White, who keeps a boarding house at number 215 Hanover street, Baltimore City, where the plaintiff lives. This witness knows nothing about the cause which led to the separation, and very little, if anything about the domestic life of the parties. She, however, gives her opinion that the defendant abandoned the plaintiff, and she says that the separation is deliberate and final, and beyond any hope or expectation of reconciliation; but she states no fact as the basis of her opinion, presumably for the reason that she knows of none. Such testimony as that of this witness ought not in any case to be received as sufficient corroboration of the plaintiff's evidence. The mere expression of opinion of a witness as to the existence of the elements constituting the cause for divorce will not do. The witness must state the facts upon which the opinion rests in order that the Court may judge whether or not it is well founded.

After the bill had been filed, the plaintiff sent his friend, a Mr. Blume, an entire stranger to the wife, for the professed purpose of seeing if there was "any possibility of a reconciliation." This effort at reconciliation, through the medium of this witness, seems to have been a mere pretense on the part of the plaintiff made for the purpose of aiding his case against his wife, and is entitled to no consideration whatever.

There is nothing in this case to show that the act of the wife in leaving her home was done with the deliberate intent to terminate finally the marriage relation, or that the restora-

tion of that relation is beyond hope, or reasonable expectation. "Marriage is the most solemn engagement which one human being can contract with another. It is a contract founded with a view not only to the benefit of the parties themselves, but to the benefit of third parties; to the benefit of their common offspring, and to the moral order of civil society. To this contract is superadded the sanctity of a religious vow. * * * There are undoubtedly cases for which a separation is provided, but it must be lawfully decreed by public authority and for reasons which the public approves." *Waring* v. *Waring*, 1 Eng. Eccles. Rep. 211. The Courts can render the State great service by a rigid scrutiny of the testimony produced in divorce cases, and by a denial of the divorce in all cases where the proof does not fully measure up to the requirements of the law.

*The decree affirmed with costs above and below.*