### LINDSAY BRYANT v. LOULA BRYANT.

(Filed 15 March, 1916.)

**Marriage and Divorce—Pregnancy—False Representations—Threats.**

> Allegations made in the complaint of the husband in a suit for divorce, that the defendant falsely represented herself with child of which he was the father, and driven by threats of violence from her father and of criminal prosecution he had married the defendant, and that afterwards he found that she was not pregnant at the time, are not sufficient to sustain the action.

WALKER, J., dissenting.

APPEAL by plaintiff at October Term, 1915, of WAYNE, from judgment of *Devin, J.,* sustaining the demurrer *ore tenus* to the complaint.

*Langston, Allen & Taylor for plaintiff.*
*No counsel for defendant.*

CLARK, C. J. This is an action by the husband for divorce. The complaint avers that there were intimate and illicit relations between the plaintiff and the defendant; that the defendant falsely and fraudulently represented to plaintiff that she was pregnant, and that the plaintiff was father of the child with which she was pregnant, and threatened plaintiff with criminal prosecution unless he married her, and that in addition thereto the father of the defendant threatened plaintiff with personal violence unless plaintiff married defendant; that on account

of the fear induced by said threats of personal violence and criminal prosecution, and coerced through the fraudulent representations of the defendant, he married the defendant, but since the marriage plaintiff has learned that the defendant is not pregnant and has not been, and he has refused to live further with her.

If the plaintiff had learned after marriage that the defendant at the time of the marriage was pregnant by another man, of which plaintiff was ignorant, it would be ground for divorce. Revisal, 1561 (4). But it is not ground for divorce that either party was unchaste or incontinent before marriage. *Steel v. Steel,* 104 N. C., 631. If it were, many a wife is entitled to divorce.

> "It is the fiend's arch mock
> To lip a wanton and believe her chaste."—BYRON.

But the plaintiff does not even allege that the defendant cohabited before marriage with any one but himself, and the best reparation he could make was to marry her. So far from being entitled to rely upon her relations with him before marrying, the plaintiff was at least guilty of contributory negligence.

The plaintiff does not plead that he was deceived by the defendant being pregnant by another man, but the deception alleged is that the defendant was not pregnant by him. It is not averred that he was not *in pari delicto.*

The threat of criminal prosecution cannot be considered, for if he were not guilty of the charge, it would not have hurt him; but he admits the charge of fornication and adultery. Probably he feared proceeding for bastardy; but that is a civil, not a criminal proceeding. *S. v. Morgan,* 141 N. C., 726; *S. v. Addington,* 143 N. C., 685. If the defendant had been pregnant by him he should have paid the legal charge of saving the county from maintaining the child, if he were not just enough to "make the defendant an honest woman" by marrying her.

The plaintiff alleges "threats of personal violence" by the father if he did not make amends by marrying his daughter, which was but natural, as the plaintiff admits his misconduct. He does not set out any overt acts, that the court might see what was done by the father in his just indignation, nor does it appear that the plaintiff could not have had protection by causing the father to be bound over to keep the peace.

The plaintiff's allegations present a most novel case. The demurrer was properly sustained.

Affirmed.

WALKER, J., dissenting: It may be that the plaintiff is in no worse case than he should be if we consider the matter solely from a moral standpoint; but we are not the keepers of his conscience nor the censors of his morals, and if he has a legal right which has been violated, the

moral quality of his act is immaterial. He alleges that by the false and fraudulent representation of the defendant he was induced to marry her, and that she made the false affirmation knowingly. It related to the essentials of the contract of marriage, which requires capacity and consent as much as any other civil contract, and is governed, in this respect, by the same rules. The authorities sustain this proposition. The allegation of fraud is admitted by the demurrer, as much so as if the defendant had answered and admitted it. It is suggested that plaintiff was not deceived by it, but the conclusive answer to this is that he says that he was deceived, because he alleges that he was induced thereby to enter into the contract, and he could not well have been induced to do so if he was not deceived. It is giving a very narrow construction to the pleading to hold that he does not allege deception, and the construction of it should be liberal, and especially as against a demurrer.

The question in this case has been so recently and exhaustively treated in *Di Lorenzo v. Di Lorenzo,* 174 N. Y., 467, that I cannot do better than quote a passage from *Justice Gray's* opinion in that case. After quoting from *Judge Story,* and declaring that free and full consent, which is of the essence of all ordinary contracts, is one of the three indispensable elements of the marriage contract, he says: "The minds of the parties must meet in one intention. It is a general rule that every misrepresentation of a material fact, made with the intention to induce another to enter into an agreement, and without which he would not have done so, justifies the court in vacating the agreement. It is obvious that no one would obligate himself by a contract if he knew that a material representation, entering into the reason for his consent, was untrue. There is no valid reason for excepting the marriage contract from the general rule. In this case the representation of the defendant was as to a fact, except for the truth of which the necessary consent of the plaintiff would not have been obtained to the marriage. It was designed to create a state of mind in the plaintiff the operation of which would be to yield a consent to marry the defendant in the belief that he was rectifying a great wrong. The minds of the parties did not meet upon a common basis of operation. The artifice was such as to deceive a reasonably prudent person and to appeal to his sense of honor and of duty. The plaintiff had a right to rely upon the defendant's statement of a fact, the truth of which was known to her and unknown to him, and he was under no obligation to verify a statement to the truth of which she had pledged herself. It was a gross fraud, and, upon reason, as upon authority, I think it afforded a sufficient ground for a decree annulling the marriage contract. The jurisdiction of a court of equity to annul a marriage for fraud in obtaining it was early asserted in this State by the court of chancery, at a time when the limited powers of

courts of law were inadequate for the purpose. This jurisdiction was expressly rested upon the general power to vacate contracts in all cases where they had been procured by fraud. From this general jurisdiction of equity a contract of marriage was not regarded as being excepted, when the assent to it was the result of artifice or of gross fraud. See *Ferlat v. Gojon,* Hopk. Ch., 478, 14 Am. Dec., 554; *Burtis v. Burtis,* Hopk. Ch., 557, 14 Am. Dec., 563. If the plaintiff proves to the satisfaction of the court that, through misrepresentation of some fact which was an essential element in the giving of his consent to the contract of marriage and which was of such a nature as to deceive an ordinarily prudent person, he has been victimized, the court is empowered to annul the marriage. Such was the judgment of the trial court upon the facts in this case, and I think that the learned justices of the appellate division, who concurred in reversing that judgment, were in error in holding that the law of this State afforded no remedy to the plaintiff."

Judge Story says that while marriage is regarded as an institution of society, it is yet founded upon the consent and free will of the parties, as other contracts are, and in that respect is governed by the same rules. Story's Conflict Laws, sec. 108, N. It is said in 26 Cyc., 832, 833: "To constitute a valid marriage, it must be entered into with the consent and agreement of both parties freely and intelligently given, which may be expressed either verbally or in writing or implied from the acts of the parties or the ceremony performed; but without such consent on both sides the marriage is a nullity, although it was solemnized in form by a properly authorized minister or magistrate. Further, there must be an actual present intention on the part of both to enter upon an immediate and continuing matrimonial relation. Fraud or falsehood going to the essentials or fundamentals of the marital relation will deprive the contract of that intelligent consent necessary to its validity, and hence will render the marriage voidable at the instance of the injured party."

The plaintiff makes another allegation that he was forced by threats and intimidation of the defendant's father to enter into the contract. This, of course, the demurrer admits. The allegation is sufficient in form to show a threat of present or immediate bodily harm if he did not comply with the father's illegal demand. This vitiates the contract. 26 Cyc., p. 906.

It is freely conceded that both the fraud and duress must be such as goes to the fundamentals and essentials of the contract, but capacity and consent are surely to be considered as of this class. *Vorhees v. Vorhees,* 43 N. J. Eq., 411; *McCreery v. Davis,* 44 S. C., 195; *Hulett v. Carey,* 66 Minn., 329. They lie at the very foundation of the contract, and so say the books, as will appear by reference to the authorities above cited. The fraud must, it is true, be material to the degree that, had it

not been practiced, the party deceived or affected by it would not have consented to the marriage; but the fraud alleged in this case is of that kind. *Di Lorenzo v. Di Lorenzo, supra.* In *Scott v. Shufeldt,* 5 Paige, 43, a similar false representation was made, and the Court held it sufficient to annul the contract.

This case is much stronger in favor of the plaintiff than were the facts in the case of *Di Lorenzo v. Di Lorenzo,* which induced the decision there.

The antenuptial relations of plaintiff with the defendant, it has been held in a well considered case, do not deprive him of the right to have the marriage annulled. It is not considered, in law, as contributory to the result so as to have that effect. *Wallace v. Wallace,* 137 Iowa, 37. That case also is an authority upon the other question, as to fraud, discussed by me, and supports my conclusion.