## MILDRED M. WIEGAND *v.* WILLIAM T. WIEGAND.

[No. 27, April Term, 1928.]

*Decided May 25th, 1928.*

644

The cause was submitted on briefs to BOND, C. J., PATTISON, ADKINS, URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*David Ash,* for the appellant.

*Arthur R. Padgett,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Mildred M. Wiegand, the appellant, on November 16th, 1926, filed in the Circuit Court of Baltimore City a bill for separate maintenance against William T. Wiegand, her husband, on the grounds of cruelty and desertion. He answered that bill, and in his answer denied the charges of cruelty and desertion, and he also filed a cross bill praying that he be divorced *a vinculo matrimonii* from his wife on the ground that she had been guilty of illicit carnal intercourse with another man prior to his marriage to her, "the same being unknown to him" at the time of his marriage. The appellant filed an answer in which she denied "the material allegations" of the cross bill as to her unchastity, but alleged condonation. The case came to trial on those pleadings, testimony was taken, and the case submitted without argument, and subsequently a decree was entered dismissing the original bill and granting the relief prayed in the cross bill. This appeal is from that decree.

The undisputed facts of the case are these: Mrs. Wiegand, *née* Rider, at the time of her marriage was an unmarried mother, and was living with her child, then about nine months old, with her mother, in the City of Baltimore. She was a Roman Catholic and Wiegand a Protestant. They were married by a Roman Catholic priest at Ellicott City on

December 6th, 1926, and after their marriage they lived together at different places in the City of Baltimore for a period of some ten months, when they went to live with his mother, Mrs. Theodora Wiegand, where they remained for about a year. They then separated. He remained with his mother, while she left the home. At the time they were married Wiegand knew that she had a child, and that at that time she was unmarried, and in his application for a marriage license he stated under oath that she was "single," although he believed that that was not an accurate definition of her status.

The evidence of the parties as to all other material facts involved in the issues tendered by the pleadings is in hopeless and irreconcilable conflict, and, as we view it, wholly insufficient to entitle either to affirmative relief. Even if there had been no conflict, the uncorroborated testimony of the appellee would not have been sufficient to entitle him to relief under his cross bill (Code, art. 35, sec. 4), and certainly the rule is not less exacting when such testimony is contradicted.

Turning first to the cross bill, to entitle the appellee to the relief prayed by him, he was bound to prove that his wife had been guilty of illicit carnal intercourse with another man prior to her marriage to him, and that he had had at the time of their marriage no knowledge of that fact. Code, art. 16, sec. 38. But there is no such proof to be found in the record. He admitted that he knew when she married him that she had a child, and that at that time she was unmarried, but, he said, she had told him that she had been married and divorced, that the child had been born in lawful wedlock, and that he did not learn the truth until after this proceeding was begun. But that statement was not corroborated in any way, is flatly contradicted by the appellant, and is inconsistent with other conceded facts and circumstances in evidence in the case. Some of these circumstances have slight force, but others are more substantial. Although he said that his wife told him that she had been divorced in Baltimore, and he questioned her about the divorce, he appears to have made no other inquiry about it, although he knew that she was quite young, and that she

had a child then about nine months old. Appellant testified that she asked her husband to tell his mother about the child, and had said to him that she would not live at his mother's home unless "she knew the truth about the child," and that he did promise to tell his mother, and that after that, while she was living with her, his mother asked her why the father of the child had not married her. And while Mrs. Wiegand at first denied having asked her that question, she later said that she was unable to say whether she had or not. Again, although at the time of her marriage her child was a mere infant, she did not take it with her but left it with her mother, and, while at first Wiegand expressed a willingness to have the child with them, whenever appellant suggested sending for it, he always had an excuse for not doing so.

These circumstances are slight and inconclusive, but, whilst they have little probative force, they are about the only facts in the case, with one exception to which we will refer, that bear at all upon the issue of Wiegand's knowledge of his wife's unchastity at the time of his marriage, and, whatever else they may do, they certainly do not tend to corroborate his testimony that he had no such knowledge. But a fact of more importance is that, when Wiegand applied for a marriage license, he stated under oath that Mrs. Wiegand was then a "single" woman, and while there might be some quibble as to whether a divorced woman was not a "single" woman within the meaning of article 62, section 5, Code, if that section stood alone, section 4, *Ibid,* clearly indicates that there is a distinction between the two terms, and in any event Wiegand effectively closed the door on that possible explanation in the following testimony: "Q. Do you know the difference between a married woman and a divorced woman? A. I think so. Q. Do you know the difference between a divorced woman and a single woman? A. I think so. Q. What is the difference between a divorced woman and a single woman? I presume one has been married and the other one has not, isn't that right? A. Yes. Q. Did you apply for the marriage license? A. Yes. Q. Did you make the affidavit that is here? A. Yes, I did. Q.

And you swore that she was a single woman at that time? A. Well, she asked me to say she was single. Q. Did you swear she was a single woman at that time? A. She asked me to say she was single because she had never been married by a priest, and according to her church she had never been married, and according to her church she was single. Q. Are you a Catholic? A. No. Q. And according to your church she had been? A. Yes. Q. You swore she was single, although you knew that was not true, because she asked you to? A. She asked me to say she was single. Q. You swore to that because it suited your purpose at that time, is that correct? A. I did it to please her."

From that evidence the inference is inevitable that he was willing to make what he believed to be a false statement under oath to "please" the appellant. And if he regarded an oath so lightly when he wanted to marry her, he cannot complain if it is not taken more seriously now when he wants to get rid of her. But, notwithstanding his testimony, it is more reasonable to assume that when he made the application and stated that the woman was single he believed that, and that he did not believe that she had been divorced. And even if the issue depended upon whether Wiegand or his wife told the truth on the stand, there is no apparent reason why the testimony of a witness who admitted that he made what he believed to be a false affidavit should be preferred to that of his wife who had made no admission quite so damaging.

But as has been stated, the issue was, not the veracity of the appellee, but whether his testimony was corroborated, and, since it was not, the cross bill should have been dismissed.

In support of her original bill, the appellant told in somewhat harrowing detail of the infelicities of her married life, and of the cruelties and indignities which she suffered at the hands of her husband. She said that on one occasion, when she left his mother's home, where she was then living, to pay her own mother a visit for ten days, that her husband, although he visited her whilst she was away, was unwilling

to have her return to live with him, and that when she did return, after an absence of two months, he said he did not want her and would throw her out, that he left her bed, deprived her of food, took away the bed clothing, struck her two or three times, made life so unbearable for her that she could not live there, and tried so strenuously to make her leave that she had to call in two policemen to protect her. The only possible corroboration of her story is found in the fact that on one occasion she did send for two policemen, but they were not called in the case, and while it appears that she complained to them that her husband "wanted to choke her," and had thrown her down the steps, the policemen were so little impressed that they diagnosed the trouble as a "family affair" and left. So far as the record shows, no one other than herself knew of her husband's alleged ill-treatment of her, and she seems to have been so little affected by it, that she remained in the home for a week after the visit of the policemen, and left in her husband's absence without notice to him, to take a position as nurse. Her testimony is contradicted by Mrs. Theodora Wiegand, with whom she lived, as well as by her husband, and while in view of what has been said too much weight cannot be given his testimony, the fact remains that her testimony is contradicted, and is not corroborated. And while the rule prescribed by article 35, section 4, Code, is not applicable to a proceeding for separate maintenance, the grounds for relief in such a proceeding are the same as those required for a divorce *a mensa et thoro* (*Outlaw v. Outlaw*, 118 Md. 503), and, since in our opinion the evidence in this case was not sufficient to prove any such ground, it follows that so much of the decree appealed from as dismissed the original bill will be affirmed. *Allen v. Allen*, 142 Md. 701; *Oertel v. Oertel*, 145 Md. 177.

> *Decree affirmed in part and reversed in part, and cross bill filed by appellee dismissed, the appellee William T. Wiegand to pay the costs.*