CAROLIN F. HOFF *v.* STANFORD I. HOFF.
[Nos. 10, 11, January Term, 1932.]

*Decided April 5th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, DIGGES, and SLOAN, JJ.

*Herbert L. Grymes,* with whom was *John Wood, Jr.,* on the brief, for the appellant.

*James E. Boylan, Jr.,* and *Theodore F. Brown,* for the appellee.

URNER, J., delivered the opinion of the Court.

One of the grounds upon which an absolute divorce may be decreed in this state is "when the woman before marriage has been guilty of illicit carnal intercourse with another man, the same being unknown to the husband at the time of the marriage, and when such carnal connection shall be proved to the satisfaction of the court." Code, art. 16, sec. 38. Under that provision the decree appealed from dissolved the marriage which had been contracted by the parties to this suit. The nuptial ceremony was performed on February 20th, 1931, at the Johns Hopkins Hospital, where the defendant had given birth six days previously to a child of which the plaintiff was the recognized father, it being an undisputed fact that he had sexual intercourse with the defendant about nine months before the child was born. At that time he was nineteen, and she only eighteen years of age, and they were both students at Western Maryland College. Their unfortunate situation, after the birth of the child, was the subject of family conferences, and the marriage urged by the girl's father was readily approved by the plaintiff's parents. Two days prior to the wedding a rumor of a sexual lapse of the defendant with another student came to the plaintiff's knowledge. The only inquiry he then made on the subject resulted in an affirmation of the existence of such a rumor. After the marriage he made further inquiries and obtained information which induced this suit for divorce. It was instituted two months after the date of the marriage. The plaintiff visited his wife several times while she remained in the hospital, but thereafter his visits were discontinued. There has been no cohabitation between them since they entered into the marital relationship.

At the trial it was denied both by the defendant and the

other student referred to that they ever had sexual intercourse. There was evidence as to declarations by him which tended to impair the effect of his testimony, and it was proved that the defendant wrote him two letters about a month before her confinement, in one of which she urgently requested him to meet her in Baltimore. The explanations given for those declarations and letters will not be reviewed, as the court is divided in opinion as to the sufficiency of the evidence to prove that the defendant in fact ever had sexual relations with any other than the plaintiff. But, if we were all convinced as to the validity of that charge, we should be unable to apply the quoted provision of the Maryland divorce statute, under the circumstances of this case, for the benefit of a husband who himself contributed to the wife's prenuptial unchastity.

In the absence of such a statute it is clear that incontinence of a wife before marriage, though unknown to the husband, would ordinarily not justify a decree of divorce on that ground. 9 *R. C. L.* 297; 19 *C. J.* 39; *Franke v. Franke,* 96 Cal. XVII, 31 P. 571; *L. R. A.* 1916E, 653, and cases there cited. There are decisions to the effect that, even when the wife was pregnant by another man, a concealment of that condition, or her misrepresentation as to the plaintiff's responsibility for it, does not entitle him to a divorce, on the ground of fraud, if he had sexual relations with her before they were married. This is said, in 9 *R. C. L.* 299, to be the generally accepted view. *Crehore v. Crehore,* 97 Mass. 330; *Foss v. Foss,* 12 Allen (Mass.) 26; *Seilheimer v. Seilheimer,* 40 N. J. Eq. 412, 2 A. 376; *Hoffman v. Hoffman,* 30 Pa. 417; *States v. States,* 37 N. J. Eq. 195; *Wallace v. Wallace,* 137 Iowa, 37, 114 N. W. 527; *Franke v. Franke,* 96 Cal. XVII, 31 P. 571; *Sylvester v. Sylvester,* 180 Mich. 512, 147 N. W. 454; *Bryant v. Bryant,* 171 N. C. 746, 88 S. E. 147; *Steele v. Steele,* 96 Ky. 382, 29 S. W. 17. A controlling consideration in those decisions was that the plaintiff, having learned, from personal experience, of the defendant's frailty, could not have the marriage dissolved on the ground that she was previously unchaste.

In *Hebb v. Hebb,* 135 Md. 697, 111 A. 240, it was held that a husband seeking a divorce on the ground of illicit carnal intercourse by the wife with another man, before the marriage, has the burden of proving, not only the fact of such unchastity, but also his ignorance of it at the time of the marriage, "and the absence of any facts which should reasonably have put him on his guard." The necessity for corroboration of a husband's testimony as to his ignorance of the alleged prenuptial unchastity of his wife was stated in *Wiegand v. Wiegand,* 155 Md. 643, 142 A. 188.

In this case the plaintiff was the first, if not the only one, to whom the defendant yielded her virtue. He married her with good reason to believe that he was the father of her recently born child. The essential ground for relief under the statute is the genuine but mistaken belief of the man, at the time of the marriage, that the woman was not unchaste so far as any one but himself might be concerned. This plaintiff was not deceived in the sense of the statute as we construe its terms and intent. His premarital intercourse with the defendant occurred without any engagement to marry, or any reliance upon mutually exclusive affection and indulgence. In our opinion it was not the purpose of the statute to relieve a husband thus implicated in the promotion of the premarital unchastity of which he subsequently complains. This conclusion is reached independently of the question as to whether the plaintiff had sufficient information and opportunity to enable him to make before marriage the investigation which was undertaken after that event, and which resulted in this suit. In view of the material and admitted facts, our conclusion is that the plaintiff is not entitled to a divorce.

As a necessary consequence of that conclusion we must hold, upon the evidence, that the defendant's cross-bill for a partial divorce and alimony on the ground of abandonment is maintainable.

The decree of the circuit court, divorcing the parties and dismissing the cross-bill, awarded the custody of the child to the mother and charged the plaintiff with its support and

maintenance during its infancy. The monthly payments required of him to that end were prescribed with due regard to his present limited earning capacity, and subject to the court's further order. In our judgment the provisions for the child's custody and support were entirely proper. In remanding the case for a decree in conformity with this opinion we shall leave the question as to the amount of alimony for determination by the lower court according to present or future circumstances.

A separate appeal by the defendant is from an order denying her petition that the plaintiff and his mother, by whom he sued as his next friend, be required to pay for the preparation and printing of the record, her counsel fee, and other costs of the prosecution of her appeal to this court from the decree. The reasons for the refusal to make such a provision for the expenses of the main appeal were stated in an opinion in which we fully concur, and a part of which we quote as follows:

"Having no property, and practically no income, the husband has neither estate nor the ability to pay counsel fees and the expense of securing the presentation of the petitioner's appeal. The court has been furnished with no authority or precedent for the passage of the order sought against the infant husband, under the circumstances of this record. *Dickey v. Dickey,* 154 Md. 681, 141 A. 387; *Feigley v. Feigley,* 7 Md. 563, 61 Am. Dec. 375.

"It is insisted, however, that the order should be passed against Lorraine K. Hoff, the mother of the husband, who appeared as his next friend in this litigation. Again the court has been referred to no principle nor authority for this action. Whatever liability the next friend incurred for costs by the use of her name for the benefit of the infant husband in his bill of complaint for divorce, this liability is enforceable at the close of the cause and not during its course. There is certainly no sound ground for an order compelling her to pay, in advance of the decree being reversed, the costs of a transcript of the record by the clerk of this court and the costs of record and the wife's brief in the Court of Ap-

peals. If she has any liability as next friend growing out of the wife's appeal, it must be by reason of the decree of the Court of Appeals at the conclusion of the appeal.

"It would be an anomalous situation for the next friend to be required to advance costs for the benefit of an unsuccessful adversary in order that this adversary may more conveniently prosecute an appeal. It should be remembered that the wife is an infant, but is employed for a reward, and that she appears in this cause by her father as next friend. There is a distinct difference in the position of a wife before decree and after its passage.

"If the decree be adverse to her she can no longer be assumed to be without fault, and certainly can have no right in equity to have the next friend prepay her costs and counsel fees.

"If the husband had either an estate or other capacity to pay, the situation before the court would be quite different. But it is difficult to conceive any liability by the next friend to pay what the infant cannot pay and what, if he could pay, would be because of a responsibility growing out of the peculiar relation of husband and wife, which relation cannot, of course, exist between the wife and the mother. If the decree be reversed or if the costs be awarded against the husband on appeal, the next friend of the husband would then first become responsible and liable to pay, because of such decree of the appellate tribunal and not because of the peculiar relation between her and the wife. *Miller's Equity Proc.,* secs. 10, 11, pp. 14-16; *Wainwright v. Wilkinson,* 62 Md. 146. The judgment, however, would not be against the next friend, as she is not a party to the suit in the sense that a judgment may be entered against her, but she is responsible and therefore liable for the costs adjudged against the infant.

"In addition, the proof is that the next friend had property, but, by reason of change in its value, she now has none out of which to advance or secure the costs."

> *Decree reversed, with costs, and case remanded for a decree in conformity with the opinion of this Court.*
>
> *Order affirmed, with costs.*