RUSSELL C. BEHR *v.* MARY H. BEHR, INFANT

[No. 12, January Term, 1943.]

*Decided March 16, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Samuel M. Campanaro* and *Ellis Levin* for the appellant.

*J. Cookman Boyd, Jr.,* with whom were *F. Murray Benson* and *Boyd & Boyd* on the brief, for the appellee.

MELVIN, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City dismissing the bill of complaint of the plaintiff (appellant) for the annulment of his marriage to the defendant (appellee) on the ground of fraud. The particular fraud alleged is that the defendant deliberately and deceitfully concealed from the plaintiff the fact that at the time of their marriage she was pregnant by another man.

The answer of the defendant, by her guardian *ad litem*, denies all the material allegations of the bill and avers that she and the plaintiff "cohabited" in June, 1941, and that her pregnancy was known to him all during his subsequent courtship, and that he is the father of the child which she bore on January 4, 1942.

At the taking of testimony the chancellor limited it to one issue, that of condonation, *vel non*. He ruled that it is immaterial whether the husband or some other man is the father of the child, and rejectd the offers of testimony on this point when made on behalf of the plaintiff. The decree appealed from is, therefore, based solely on the chancellor's decision as to condonation.

The facts of the case on this issue are simple and clear. These parties were married on October 10, 1941, when he was over twenty-three years of age and she eighteen. About ten days thereafter a photograph was taken of them standing together, which photograph was admitted without objection as an exhibit in these proceedings, and plainly shows the wife's advanced state of pregnancy at that time. On November 14, 1941, they called at the office of Dr. Harry M. Moore at Glen Burnie, who told the husband that his wife "definitely showed a pregnancy of approximately four or five months' duration," and asked him "why he waited so long to get pre-natal care for his wife." She, in the presence of her husband, told the doctor that her last menstrual period was on June 3, 1941, and the latter then calculated the date of the expected birth to be March 10, 1942. The hus-

band, himself, according to his own testimony, thereupon went to a hospital in Baltimore and made a deposit on a room for his wife for March, in accordance with a reservation previously made by Dr. Moore. He admits that the doctor did ask him why he had waited so long before bringing his wife to him and, also, that the date of expectancy was set for March 10, 1942. He (the husband) said he knew that the average period of gestation is nine months, but claims that he and his wife both thought that the doctor had made a "mistake" in his calculations. He further admits, however, that he made no inquiry about this but left it for his wife to follow up, knowing that if she and the doctor were correct as to the March prognostication, the conception must have taken place in June, 1941, as she claimed. The child, born January 4, 1942, was professionally pronounced to be a "seven months baby."

Notwithstanding the husband's knowledge of these facts, and specifically of his wife's advanced pregnancy as of November 14, 1941, he continued to cohabit with her thereafter and by so doing condoned any pre-nuptial incontinence on her part. This condonation, in itself, leaves the husband without any standing in a court of equity and his suit for annulment of the marriage was properly dismissed on that ground. There are other aspects of the case, however, which are proper to be considered on this appeal.

In appellant's brief it is stated that while the specific question of fraud as to a woman's pregnancy at the time of her marriage has never arisen in this court, other forms of fraud have been held sufficient for repudiating a marriage and extended quotations are given from cases in support of this principle. However, in none of them do the facts point to condonation as the issue, nor to this particular species of alleged fraud as the basis for an annulment suit. Here, the court may assume to be true the husband's allegation that at the time of his marriage the wife concealed from him the fact that she was then

pregnant, and also that he had not previously had intr-course with her—thus stating a case for annulment for fraud—and yet find that this alleged fraud is removed as a basis of relief in the case because of his subsequent relations with his wife after knowing her condition. This is the situation which prevails here.

While marriage is a civil contract and not a sacrament, the law regards it with a sanctity which is not attributed to any other kind of contract; on the theory that the public has a direct interest in it as an institution of transcendent importance to social welfare. *Forns-hill v. Murray*, 1 Bland 479, 18 *Am. Dec.* 344; *Denison v. Denison*, 35 Md. 361; *Le Brun v. Le Brun*, 55 Md. 496; *Ridgely v. Ridgely*, 79 Md. 298, 29 A. 597, 25 *L. R. A.* 800; *Twigg v. Twigg*, 107 Md. 676, 69 A. 517; *Wimbrough v. Wimbrough*, 125 Md. 619, 94 A. 168. Moreover, in Maryland the marriage contract is required to be solemnized by a religious ceremony (*Denison v. Denison, supra*), and will not be dissolved or annulled by the courts except for the soundest of reasons and upon the strictest of proof. *Le Brun v. Le Brun, supra.*

In the pending case, the reason advanced by the plaintiff is that a fraud was perpetrated upon him by the defendant in that at the time of their marriage she concealed the fact that she was then pregnant. This states a case of pre-marital unchastity which, prior to the enactment of Chapter 558 of the Acts of 1939, was expressly listed in the Maryland Code, Article 16, Section 38, as a ground for absolute divorce. However, since the Act of 1939, which eliminated this method of procedure, the nullification of the marriage contract for this species of fraud can only be accomplished through the exercise of the inherent or general powers of a court of equity to set aside contracts for fraud, duress, etc., exclusive of Article 62, Section 16 of the Maryland Code, or of any other statutory provision. *Wimbrough v. Wimbrough, supra; Brown v. Scott*, 140 Md. 258, 117 A. 114; *Corder v. Corder*, 141 Md. 114, 117 A. 119; *Oswald v. Oswald,*

146 Md. 313, 126 A. 81; *Le Brun v. Le Brun, supra;*
*Fornshill v. Murray, supra.*

In a case of this kind where the charge of fraud goes
to the very foundation of the institution of marriage, the
law places the burden of proof most heavily upon the
plaintiff, and equity and good conscience combine to re-
quire a rigid scrutiny of his case by the court. *Twigg
v. Twigg,* 107 Md. 676, 681, 69 A. 517. Even if the
standard of judgment were less exacting there is noth-
ing about the case before us which substantiates this
plaintiff's claim to equitable relief. Not only is his own
testimony on the main point unbelievable and also with-
out the required corroboration (*Wiegand v. Wiegand,*
155 Md. 643, 142 A. 188), but it is completely overcome
by the testimony on behalf of the defendant, and particu-
larly that of Dr. Moore, an impartial and competent
witness.

The facts shown by the record here bring this case
directly within the ruling of *Hebb v. Hebb,* 135 Md. 697,
111 A. 240, in which it was held that a husband seeking
a divorce on the ground of illicit carnal intercourse by
his wife with another man before the marriage has the
burden of proving not only that fact, but also his ignor-
ance of it at the time of the marriage "and the absence
of any facts which should reasonably have put him upon
his guard." Cited in *Hoff v. Hoff,* 162 Md. 248, 252,
159 A. 591.

To meet this burden of proof all that the plaintiff has
offered as to his ignorance of his wife's condition at the
time of the marriage is his own assertion on the point,
which is directly contradicted by his admission of facts
which should reasonably have put him on his guard.
These admitted facts are: the visit of the husband and
wife to Dr. Moore on November 14, 1941; the doctor's
announcement to the husband that the wife then was
four or five months pregnant, and the reservation of a
room in a Baltimore hospital for March 10th as the date
of birth expectancy. All of these facts are more than
sufficient to have at least put the plaintiff on guard as

to his wife's condition of pregnancy at the time of marriage. Also, by way of further discounting his claim of ignorance of her condition at that time is the photograph admitted in evidence without objection and taken ten days after the marriage. A mere inspection of this photograph shows a condition that must have been obvious to the husband and to all who saw the wife at that time. Under all the facts and circumstances of this case and the law applicable thereto, the plaintiff has completely failed to show any ground for equitable relief, and the chancellor's decree dismissing his bill of complaint is, therefore, affirmed.

*Decree affirmed, the appellant to pay the costs.*