Rafael A. SARDA, Appellant,

v.

Maria Clara Silva D'Hebril SARDA,
Appellee.

Maria Clara Silva D'Hebril SARDA,
Appellant,

v.

Rafael A. SARDA, Appellee.

Nos. 2296, 2297.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 16, 1959.

Decided July 7, 1959.

**306**

Bryce Rea, Jr., Washington, D. C., with whom Gordon Allison Phillips, Washington, D. C., was on the brief, for Rafael A. Sarda.

Elizabeth S. Freret, Washington, D. C., for Maria Clara Silva D'Hebril Sarda.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

The husband, appellant in 2296, filed a complaint asking for annulment of the marriage on the ground of his physical incapacity to consummate it because of psychological maladjustment. The wife, appellant in 2297, in her answer admitted all of the allegations of the husband's complaint. After a hearing, the court dismissed the complaint. The wife then filed two motions: one for leave to amend her answer by including a cross-complaint for annulment because of the husband's incapacity, the other to vacate the order dismissing the husband's complaint and to grant a rehearing or new trial. Both motions were denied.

The husband in 2296 appeals from the order dismissing his complaint; the wife in 2297 appeals from the order denying her motions. We reach the conclusion that justice to both husband and wife requires a reversal of this case.

At the hearing on the husband's complaint he testified frankly and clearly that because of a certain mental abnormality on his part he was unable to physically consummate the marriage. A qualified psychiatrist testified that the husband became his patient on January 20, 1958; that he treated him on an average of once a week until the first of June when he was obliged to suspend treatments temporarily because the husband was physically ill, but that the psychiatric treatments were resumed and he was still treating him on June 25th, the date of the hearing. This psychiatrist completely supported the testimony of the husband as to his inability to consummate the marriage. He explained

very clearly that the basis of the husband's impotency was psychogenic. Summarizing the testimony of the psychiatrist, he found that the husband's mental condition prevented him from consummating the marriage; that it was quite doubtful whether this condition could ever be cured; that his problem would probably have to be lived with rather than solved; that he was completely impotent; that psychogenic causes have either actually prevented or made it impossible for him to have sexual intercourse.

■ We find it difficult to understand how the court could refuse to accept this testimony as a basis for the annulment. It should be noted at the outset that Rule 11 of the Domestic Relations Branch requires the trial judge to " * * * find the facts specially and state separately its conclusions of law." This was not done in this case. The judge wrote a memorandum opinion in which he apparently accepted as proven facts the residence of the husband, the marriage and the subsequent separation as testified to by the husband, but then concluded that " * * * [T]he Court is not satisfied that the plaintiff [husband] has established, by clear and convincing evidence and strict proof (Carr v. Carr, D.C., 82 F.Supp. 398), the facts entitling him to an annulment of his marriage." It is obvious that the court was attempting to paraphrase the following language in Carr:

"* * * [M]arriage contracts will not be dissolved except for the soundest of reasons and upon the strictest of proof." Citing Behr v. Behr, 181 Md. 422, 30 A.2d 750.

The district court used the above language in explaining the law of Maryland. We know of no case in this district that supports the trial court's language; indeed, in Stone v. Stone, 78 U.S.App.D.C. 5, at page 7, 136 F.2d 761, at page 763, which was an uncontested annulment case where the wife was the only witness, the court of appeals used language that is much more

apropos than the language in Carr when it said:

"* * * It is the purpose of the law of the District to require caution in the granting of uncontested divorces [footnote omitted], and to prevent the granting of default decrees, without proof. [Footnote omitted.] But it is just as much the purpose of the law that marriages procured by fraud may be set aside, at the instance of the innocent party." [Footnote omitted.]

And in the same case the court continues 78 U.S.App.D.C. at page 8, 136 F.2d at page 764:

"* * * In this case there was positive testimony, uncontradicted, and not inherently improbable. Neither a jury nor a judge is at liberty to disregard such evidence. [Footnote omitted.] ' * * * where the testimony is all one way, and is not immaterial, irrelevant, improbable, inconsistent, contradicted, or discredited, such testimony cannot be disregarded or ignored by judge or jury, and if one or the other makes a finding which is contrary to such evidence, or which is not supported by it, an error results, for which the verdict or decision, if reviewable, must be set aside. * * * Kelly v. Jackson, 6 Pet. 622, 631, 8 L. Ed. 523.' "

The court apparently felt that the testimony of the psychiatrist was not convincing because it refers to him as an "out-of-town physician [he practices in Arlington, Virginia, a part of metropolitan Washington] specializing in the practice of psychiatry * * *." The law reports are replete with most important cases where the testimony of out-of-town physicians was received and acted upon without question. Again, the court attempts to minimize the effect of the medical testimony when it refers to " * * * the testimony of the physician which, of course, is largely based on what the plaintiff [husband] told him." The plain inference from this language is

308

that although the psychiatrist admittedly supported the husband's testimony the weight of his evidence is affected because he was relying largely on what the husband told him. Our court of appeals, in Kaufman v. Kaufman, 82 U.S.App.D.C. 397, 164 F.2d 519, had before it for review an action by the wife to annul the marriage on the same ground that is involved here. After the wife had testified she called a psychiatrist whose testimony was to the effect that he found no physical evidence of incapacity as a result of his examination of the husband, but his testimony then laid the foundation for the statement of his opinion as to the presence of psychogenic causes for such incapacity. Upon the propounding of the question as to whether in his opinion the husband was matrimonially incapacitated because of psychogenic reasons, the trial court declined to permit the question to be answered "upon the ground that the answer would necessarily be based solely upon the defendant's [husband] statements and would, therefore, be inadmissible as hearsay." The trial court then dismissed the complaint. The court of appeals said 82 U.S.App.D.C. at page 398, 164 F.2d at page 520:

"  *  *  *  The courts have long recognized the fact that impotence is frequently the result of psychogenic causes. [Footnote omitted.] Indeed one medical authority states that most cases of impotence seen by urologists are of the psychic type rather than the result of physical defects.  *  *  *  *In diagnosing such a subjective condition the physician must necessarily rely largely upon the history and symptoms described to him by the patient. Accordingly it was proper for [the physician] to base his diagnosis as to the defendant's impotence upon the history and symptoms which the latter related to him* [footnote omitted] *and the trial justice should have permitted him to answer the question propounded to him."* (Emphasis supplied.)

We come to the situation following the dismissal of the husband's action. As has been noted, shortly after the dismissal the wife filed motions for rehearing and for leave to amend her answer by including a cross-complaint asking for the annulment of the marriage on the same ground advanced by the husband. In her affidavit, attached to the motion for rehearing, the wife stated that she had returned to this District since the hearing and she was now available and willing to testify that the marriage had never been consummated because of the impotency of the husband; that she had known the husband since childhood and that she had no reason to question, prior to the marriage, his capacity to consummate it; that she believes herself to be normal in every respect and that she entered into the marriage with every expectation of consummating it, leading a normal married life and having children. The court denied both motions.

■ It seems to us an abuse of discretion to deny the wife an opportunity to testify in this case either by granting a rehearing or permitting her to file a cross-complaint for annulment; particularly is this so when in the opinion of the trial judge he stated: "  *  *  *  Nor has the plaintiff [husband] made any effort to produce, either by personal appearance in Court or by deposition, what the Court considers to be the best available evidence in this case—namely, the testimony of the wife."

When the wife's most unfortunate situation is considered, we think fundamental justice requires that every proper opportunity be afforded her, before whatever judge will be assigned to retry this case, to fully testify concerning the circumstances of the matrimonial situation in which she finds herself through no fault of her own.

Reversed with instructions to vacate and set aside the orders entered July 23, 1958 and September 9, 1958.