Julia Ann CRAUN, Appellant,

v.

Donald Lee CRAUN, Appellee.

No. 16298.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 17, 1962.

Decided March 1, 1962.

738

Mr. Earl H. Davis, Washington, D. C., for appellant.

No brief was filed on behalf of appellee. Mr. Melvin Hirshman, Washington, D. C., entered an appearance for appellee.

Before BAZELON, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal allowed by this court from a decision of the Municipal Court of Appeals, one judge dissenting, 168 A.2d 898 (1961), affirming a decision of the trial court (Domestic Relations Branch of the Municipal Court for the District of Columbia) dismissing appellant's (wife) complaint for annulment of her ceremonial marriage to appellee on the ground of fraud. Appellee filed an answer to the complaint but did not appear at the trial of the case, although he was represented there by counsel. Neither he nor counsel appeared at the hearing in the Municipal Court of Appeals or at the hearing in this court; nor was a brief filed on his behalf in either court.

Two witnesses, as well as appellant, testified in appellant's behalf in the Municipal Court. The following facts appear without contradiction:

Appellant followed her parents from West Virginia to Washington in September 1958, leaving behind her the wreckage of a marriage contracted when she was seventeen years of age and dissolved four years later by a divorce secured by her for nonsupport. She went to work at Sherrill's Bakery in Southeast Washington and shortly thereafter met appellee in a nearby restaurant, where her mother worked as a waitress. After dating for approximately two months, they decided to get married. During the course of their courtship appellee represented to appellant that he was steadily employed; that he had been so employed with his present employer for seven years; and that he had a furnished apartment into which they could move after the wedding. Appellant accepted on faith the truth of these statements and made no independent inquiry to determine their validity.

On November 3, 1958, appellee, accompanied by a couple named Smith, called for appellant as she was getting off work. The four of them then drove to Forestville, Maryland, where they participated in a double wedding ceremony.[1] Immediately after this ceremony the party began the drive back to Washington. In the course of conversation appellant was advised by appellee that he was not then employed and that he had not been employed for some time; that he had no furnished quarters rented for them but that, in fact, he expected appellant to live in an apartment consisting of one bedroom, living room and kitchen and occupied by the Smiths and two other unmarried couples who were living together meretriciously. Appellant refused to accept such living accommodations and insisted on being taken to her home; she was then informed by appellee that he did not want to see her again until she was willing to live with him where he wanted.[2] The marriage was never consummated.

Appellant subsequently learned that at the time of the marriage appellee had a criminal record (six disorderly charges and one conviction for petit larceny). She testified under oath at the trial of

---

1. Appellant later discovered that, although the Smiths went through a ceremonial marriage that night, each of them had a lawful spouse from whom no divorce had been obtained; so their purported marriage at that time was in fact bigamous.

2. Three days after appellant's refusal to live with appellee, he began living with another girl. As of the time of the trial of this case he had lived, off and on, with three different women.

this case that had she known all of these facts prior to the ceremony she would never have consented to the marriage.

Relief was denied appellant by the Municipal Court and the Municipal Court of Appeals mainly on the basis that she had made no premarital investigation of appellee's background. Those courts reasoned that, since appellant was no neophyte to the marital experience, she should have been on her guard concerning the representations of her intended husband. In other words, it was thought that the disillusionment occasioned by the failure of her first marriage should have made her more cautious about contracting her second.

▮▮▮▮ The present marriage was contracted in Maryland. The Maryland courts have said that fraud which goes to the very essence of the marriage contract will render the contract voidable at the request of the innocent party.[3] Further, the requirements as to the degree of fraud necessary to set aside a marriage are less exacting when the marriage has not been consummated.[4] Of the essence of the marriage contract are the rights and duties pertaining to marital cohabitation.

▮▮▮▮ Applying these principles to the instant case, we find that appellee revealed to appellant, almost immediately after the wedding ceremony, that he expected her to spend the bridal night in a one bedroom apartment already occupied by the Smiths and two other couples who were not married. It certainly cannot be disputed, if we are to be civilized, that there are certain sectors of living which demand privacy; and consummation of a marriage is one phase of life in the private sector.

Moreover, appellee's fraud in this respect was not limited to the first night of the marriage. He placed no time limit on the living conditions he expected ap-

pellant to share with him. As far as he was concerned, those living conditions were to continue for an unspecified period of time. In effect, the fraud perpetrated by appellee upon appellant consisted of the misrepresentation or concealment of the fact that their marital cohabitation was scheduled to take place in circumstances akin to communal concubinage. The principle of togetherness has not yet ingratiated itself so pervasively into the fabric of our society that we are inclined to gainsay the conclusion that fraud of this character, if promptly denounced upon discovery by the innocent party, can vitiate a marriage where the proof is clear and convincing. Certain it is, there is no public interest to be promoted by maintaining such a union, either in form or substance. In any event, the idea violates our conception of the basic fundamentals of marriage. We think the concealment of such a warped design for conjugal existence as proposed by appellee in the instant case constituted fraud piercing to the heart of the marital compact, particularly when viewed in the light of other facts present here.

Upon discovery of the living arrangements envisaged by her spouse, appellant immediately protested. In the face of appellee's adamant insistence that she either live with him on his terms or not at all, she chose to do the latter. She returned to her own home the same evening she was married, and the marriage was never consummated. In such circumstances we think appellant is entitled to an annulment of her marriage.[5] We quite agree with the following language quoted from the dissenting opinion of the Municipal Court of Appeals:

"In these circumstances I think it was unrealistic to deny relief to this plaintiff on the ground 'that the public has a direct interest in [the marriage] as an institution of transcend-

3. Behr v. Behr, 181 Md. 422, 30 A.2d 750 (1943); Brown v. Scott, 140 Md. 258, 117 A. 114, 22 A.L.R. 810 (1922).

4. Holland v. Holland, 224 Md. 449, 168 A. 2d 380 (1961).

5. Cf. Stone v. Stone, 78 U.S.App.D.C. 5, 136 F.2d 761 (1943); Brown v. Scott, supra.

ent importance to social welfare.' It was even more unrealistic to deny relief because plaintiff did not launch a premarital investigation of her husband's financial status and criminal record. Nor is there much appeal in the trial court's suggestion of the much less savory remedy of a suit for divorce on the ground of adultery." 168 A.2d at 899.

The judgment is reversed and the case is remanded with instructions to direct the reinstatement of appellant's complaint and to dispose of it in accordance with this opinion.

So ordered.